UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| ALYSSA SANDERS, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff | § | |
| | § | CAUSE OF ACTION: |
| v. | § | 1:22-cv-314 |
| | § | |
| CITY OF AUSTIN, | § | |
| | § | |
| Defendant | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Alyssa Sanders brings this 42 U.S.C. § 1983 case against the City of Austin for the brutal and excessive force inflicted on her by an Austin Police Department officer who shot her in the head as she was peacefully exercising her right to peaceably assemble and protest.

As a consequence of this unconscionable, deadly use of force and the City's practices that enabled it, Alyssa's skull fractured and she suffered a serious traumatic brain injury. Her life will never be the same.

### I. Parties

1. Plaintiff Alyssa Sanders is a resident of Travis County, Texas.

2. Defendant City of Austin, is a municipality that operates the Austin Police Department. Defendant City of Austin may be served through its City Clerk at 301 W. 2nd Street, Austin, TX 78701. The City's policymaker for policing matters was former Police Chief Brian Manley at the time of the incident and is currently Chief Joseph Chacon.

### II. Jurisdiction and Venue

3. This Court has federal question jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

4. This Court has general personal jurisdiction over Defendant as the Austin Police Department is in Travis County, Texas.

5. This Court has specific *in personam* jurisdiction over Defendant because this case arises out of conduct by Defendant that injured Plaintiff Alyssa Sanders, and which occurred in Travis County, Texas, which is within the Western District of Texas.

6. Venue of this cause is proper in the Western District pursuant to 28 U.S.C. § 1391(b) because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in Travis County, which is within the Western District of Texas.

### III. FACTS

7. Following the police killings of George Floyd in Minneapolis and Mike Ramos in Austin, demonstrators organized protests against police brutality throughout Austin on May 30 and on May 31, 2020.

8. Plaintiff Alyssa Sanders attended the demonstrations to lend her voice to the chorus demonstrating against police violence.

9. On May 30, 2020, APD officers overreacted numerous times and used chilling, excessive force on multiple peaceful demonstrators. Among others, APD's victims on May 30, 2020 included Nicole Underwood, Jason Gallagher, Jose Herrera, Tracy Cates, Levi Ayala, and Bomani Barton.

10. In fact, the officers that shot Ms. Underwood, Mr. Ayala, and Mr. Barton all have been indicted for aggravated assault by a public servant.

11. Officer John Siegel, who shot Nicole Underwood, also pepper sprayed Mr. Gallagher.

12. When asked why he shot Ms. Underwood, Officer Siegel pled the Fifth and refused to answer.

13. On May 30, 2020, Chief Manley, City Manager Spencer Cronk, Mayor Steve Adler, and other senior city leadership were explicitly told by then Austin City Council Member, Greg Casar, about horrific injuries caused by APD officers on May 30, 2020.

14. Casar specifically noted the injuries to Nicole Underwood and Levi Ayala and pleaded with APD and City leadership to put a stop to APD's violence.

15. Rather than correct APD's dangerous behavior and put a stop to his officers shooting people, Chief Manley and his senior leadership at APD continued to have officers fire less lethal weapons at protesters, often from unsafe distances and into crowds.

16. Thus, on the afternoon of May 31, 2020, Alyssa remained in potential danger simply because she was standing among protesters near APD officers at the intersection of Cesar Chavez St. and Guadalupe St., holding a water bottle and a sign that said, "Black Lives Matter."

17. After a bus passed between a line of APD officers and the protesters, APD officers pushed into the crowd.

18. The force they used was unnecessary and unreasonable.

19. More particularly, APD officers pepper sprayed the crowd indiscriminately and fired bean bag shotguns and 40mm less lethal guns into the crowd.

20. As a consequence of APD's actions, Sanders attempted to escape to safety.

21. Before she could do so, APD Officer Eric Heim fired his 40mm gun and shot Alyssa in the head.

22. Alyssa was doing absolutely nothing wrong.

23. Alyssa was doing absolutely nothing remotely threatening to any protester or officer around her.

24. Yet Officer Heim shot her in the head without any reason or justification.

25. Officer Heim's shot fractured Alyssa's skull and caused multiple brain bleeds.

26. Officer Heim has been indicted for the criminal offense of aggravated assault by a public servant.

27. Upon information and belief, Officer Heim, and APD leadership generally, resented and were substantially motivated by their opposition to the demonstrators' message that police violence must end and that Black Lives Matter.

28. Moreover, the attack by Heim and APD would chill a person of ordinary firmness from continuing to engage in protected speech and assembly.

29. Numerous officers were standing alongside Officer Heim, but not one interceded to stop him or the other officers firing.

30. As a consequence of APD and Heim's conduct, Alyssa has suffered significant and permanent pain, mental anguish, impairment, injury, and disfigurement.

31. Tragically, Alyssa was merely one of many innocent people APD officers used excessive force against on May 30 and May 31 who were doing nothing more than speaking out against police violence.

32. As noted earlier, on May 30, 2020, APD's victims of unreasonable force included, among others, Nicole Underwood, Jason Gallagher, Joe Herrera, Levi Ayala, and Bomani Barton.

33. APD Officer John Siegel used unreasonable force against Underwood and has been indicted for aggravated assault by a public servant.

34. APD Officer Nicholas Gebhart used unreasonable force against Ayala and has been indicted for aggravated assault by a public servant.

35. In fact, the City has agreed to pay Ayala a settlement of $2,950,000.

36. APD Officers John Siegel, Salvador Gonzalez-Galvan, and Bryan McCulloch used unreasonable force against Gallagher.

37. APD Officer James Morgan used unreasonable force against Herrera.

38. And despite the fact that Morgan seriously injured Herrera, APD has not conducted an Internal Affairs investigation into the Herrera shooting, and has not identified Morgan as the shooter to the Travis County District Attorney's office.

39. APD Officer Kyu An used unreasonable force against Barton and has been indicted for aggravated assault by a public servant.

40. And these are just a few examples of APD's outrageous abuse preceding the attack on Ms. Sanders.

41. Despite then Councilman Casar's attempt on May 30, 2020 to stop the carnage, APD's leaders did not stop APD from firing less lethal weapons at protestors.

42. Thus, on May 31, 2020, APD officers continued to fire weapons at innocent protesters like Sanders with reckless abandon.

43. One of the many individuals shot on May 31, 2020 was Anthony Evans. Evans was hit in the face.

44. Evans was doing nothing wrong before being shot.

45. APD Officer Kyle Felton used unreasonable force against Evans and has been indicted for aggravated assault by a public servant.

46. The City agreed to pay a settlement to Mr. Evans of $2,000,000.

47. Another of the many individuals APD shot in the head was Justin Howell, a twenty-year-old college student who also had done nothing that could possible justify him being shot.

48. APD Officer Jeffrey Teng used unreasonable force against Howell.

49. Teng has been indicted for aggravated assault by a public servant and the City agreed to pay Howell a settlement of $8,000,000.

50. And when given the opportunity to explain why he shot Justin, Teng pled his Fifth Amendment right not to incriminate himself.

51. After being shot in the head, Justin lay on the ground unconscious and bleeding.

52. No police officer came to help him.

53. Instead, protesters rushed to help Howell.

54. Incredibly, rather than assist those protesters get Justin emergency medical care, APD shot one of them.

55. In particular, APD officer Chance Bretches shot Maredith Drake, a medic with her hands in the air who was trying to get Justin help.

56. Drake posed no danger whatsoever to anyone.

57. APD Officer Chance Bretches used unreasonable force against Drake.

58. And when asked directly if he intentionally shot Ms. Drake while she posed no danger to anyone, Officer Bretches invoked his Fifth Amendment right not to incriminate himself.

59. And Bretches pled the Fifth to questions concerning his assault on another citizen in 2019 and on Arianna Chavez with a bean bag shotgun just a few hours earlier.

60. Upon information and belief, none of the individuals indicted for aggravated assault by a public servant, including Heim, have been disciplined by APD for their conduct.

61. Likewise, neither Chief Manley nor any of Heim's supervisors have been disciplined for tolerating, authorizing, or endorsing this type of despicable and unconstitutional conduct as well as the many other instances of excessive force and unconstitutional conduct that have been documented.

62. This lack of discipline as to senior leaders and Manley himself is all the more shocking as Chief Manley has acknowledged that Maredith Drake, Levi Brad Ayala, Justin Howell, and Anthony Evans were victims of unreasonable force by APD officers.

63. Equally disturbing, despite watching videos of several APD officers gun down innocent protesters, APD's current Chief, Joseph Chacon, ratified the wrongdoing of his officers by, among other things, claiming in a press conference that he had seen no evidence of criminal conduct by APD officers.

64. To date, Chief Chacon has refused to make public the videos showing criminal conduct and abhorrent violence by APD officers.

65. City Manager Cronk, who also ignored then Councilman Casar's pleas for help, further ratified APD's misconduct by telling the public that officers who had violated the law had not done so.

66. APD Chief of Police, Brian Manley, adopted policies that authorized or tolerated this unreasonable, unnecessary, and brutally excessive force even though Chief Manley had long known of the dangers of firing projectiles into crowds and at defenseless persons, and was actually aware that less lethal weapons had been unreasonably used multiple times on May 30, 2020 and multiple times again on May 31, 2020 prior to the attack on Sanders. Despite this,

7

Austin Police Department policies and practices – and Manley and APD leadership – authorized their continued use. And despite claims to the contrary, and knowing they resulted in numerous serious injuries, Chief Chacon continues to authorize the use of bean bag shotguns and 40 mm so called less lethal guns.

67. Chief Manley knew, as any reasonable policymaker capable of rational thought would also know, including but not limited to Chief Chacon now, that as a direct consequence of such practices, innocent people like Plaintiff would be injured and victimized, and their constitutional rights violated.

68. In fact, then Councilman Casar told him as much in a text message.

69. And numerous people in addition to Alyssa Sanders suffered severe and devastating injuries as a result of APD's practices and excessive force on May 30, 2020 and May 31, 2020.

70. According to Dell Medical Center's physicians, seven victims required surgical interventions and four victims retained less lethal rounds in their bodies/heads.

71. More particularly, victims suffered intercranial hemorrhages, depressed skull fractures, depressed frontal bone fracture, fractured jaws, brain damage, and post traumatic stress disorder.

72. After ignoring the pattern of excessive force that preceded the attack on Alyssa for several more days, multiple members of the City Council called for Manley to be removed as APD's Chief of Police.

73. Following the calls to remove him, Chief Manley acknowledged the obvious, the practices and policies at Austin Police Department of shooting individuals in crowds were dangerously flawed and he agreed to change them – a change any reasonable policymaker would

have made prior to Plaintiff being shot. But he and subsequent chiefs still continue to authorize the use of these potentially deadly weapons on citizens.

74. Additionally, APD under Manley's leadership has a long history of failing to discipline, re-train, or terminate officers known to have used excessive force.

75. Sadly, this practice has continued under Chief Chacon and City Manager Cronk.

## IV. CAUSES OF ACTION

### A. FIRST, FOURTH AND FOURTEENTH AMENDMENT § 1983 *MONELL* CLAIM

76. Plaintiff incorporates the preceding paragraphs as if alleged herein.

77. APD Officer, Eric Heim, while acting under color of law, used excessive and conscience shocking force on Alyssa Sanders when she posed no danger to anyone and in retaliation against her protected speech rights.

78. The City of Austin, had the following policies, practices, or customs in place when APD Officer Heim retaliated against and shot and injured Plaintiff Sanders without justification:

   a. Shooting less lethal weapons into crowds where innocent people could be injured;

   b. Shooting less lethal weapons at or near people who pose no danger to anyone;

   c. Using deadly force when it is not justified.

   d. Using, authorizing, and/or tolerating excessive force against non-violent protestors;

   e. Failing to adequately discipline officers;

   f. Failing to adequately supervise officers;

   g. Not interceding to stop excessive force or constitutional violations;

   h. Failing to adequately train officers concerning de-escalation of force, crowd control, use of force against non-violent protestors, and the use of less lethal weapons and the dangers associated therein;

    i. Retaliating against protestors;

    j. Failing to train officers regarding demonstrators' free speech and assembly rights;

    k. Failing to train officers to intervene to stop constitutional violations, including use of excessive force;

    l. Failing to train or instruct officers about specific incidents it considers unreasonable, excessive force, or in violation of the Constitution; and

    m. Training officers to act as paramilitary "warriors" and creating an "us vs. them" culture where officers were "at war" with the community they were supposed to be serving, which encouraged officers to use excessive force.

79. Each of the policies, practices, or customs delineated above was actually known, constructively known, approved, and/or ratified by City of Austin and its then policymaker for law enforcement purposes, Chief of Police, Brian Manley, and was promulgated with deliberate indifference to Sanders' First, Fourth and Fourteenth Amendment rights under the United States Constitution. Moreover, the known and obvious consequence of these policies, practices, or customs was that Austin Police Department officers would be placed in recurring situations in which the constitutional violations described within this complaint would result. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

80. Consequently, the policies and conduct delineated above were a moving force of Plaintiff's constitutional deprivations and injuries, and proximately caused severe damages to Plaintiff.

81. Moreover, then Chief Manley, current Chief Chacon, and senior level APD superiors knew that multiple officers had violated individuals' right to speech and assembly, and had used excessive force at the protests the day before and earlier on May 31, but took no action to prevent further constitutional violations. As a consequence of them not stopping the abusive

tactics, they directly and proximately caused numerous people to suffer serious injuries. Rather, they condoned and ratified it until public opinion and multiple calls for his removal caused Manley to reverse the City's indefensible position – far too late for the many individuals that needlessly suffered serious injuries, including Plaintiff. Accordingly, the City is also liable directly for its policymakers' misconduct and failure to adequately supervise, train, and stop APD officers from using excessive and/or conscience shocking force and from violating protestors' First Amendment rights, which were a proximate cause of Plaintiff's deprivation of rights and injuries.

82. Plaintiff Sanders brings this claim pursuant to 42 U.S.C. § 1983.

## V. DAMAGES

83. Plaintiff Sanders seeks the following damages:

   a. Past and future medical expenses;

   b. Past and future economic damages, including (but not limited to) loss of earning capacity;

   c. Past and future physical pain and mental anguish;

   d. Past and future impairment;

   e. Past and future disfigurement;

   f. Loss of consortium; and,

   g. Attorneys' fees pursuant to 42 U.S.C. § 1988.

## VI. JURY DEMAND

84. Pursuant to Federal Rule of Civil Procedure 48, Plaintiff hereby requests a jury trial.

## VII. Prayer for Relief

85. To right this injustice, Plaintiff requests the Court:

   a. Award compensatory damages against Defendant;

   b. Award Plaintiff costs and fees, including but not limited to expert fees and attorneys' fees, pursuant to 42 U.S.C. § 1988;

   c. Award pre-judgment and post-judgment interest at the highest rate allowable under the law; and,

   d. Award and grant such other just relief as the Court deems proper.

Dated: April 4, 2022.

Respectfully submitted,

**EDWARDS LAW**
603 W 17th St.
Austin, Texas 78701
Tel. 512-623-7727
Fax. 512-623-7729

By     /s/ Jeff Edwards
    JEFF EDWARDS
    State Bar No. 24014406
    jeff@edwards-law.com
    MIKE SINGLEY
    State Bar No. 00794642
    mike@edwards-law.com
    DAVID JAMES
    State Bar No. 24092572
    david@edwards-law.com
    PAUL SAMUEL
    State Bar No. 24124463
    paul@edwards-law.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

By my signature below, I certify that a true and correct copy of the foregoing has been served on all counsel of record via the Court's electronic case filing system.

/s/ Jeff Edwards
Jeff Edwards